874 So.2d 185 (2004)
Victoria DAVIS
v.
J. Barrett BENTON.
No. 2003 CA 0851.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*186 Paulette Porter La Bostrie, St. Gabriel, Counsel for Plaintiff-Appellant Victoria Davis.
Jay M. Simon, Baton Rouge, Counsel for Defendant-Appellee J. Barrett Benton.
Before: WHIPPLE, KUHN, and McDONALD, JJ.
KUHN, J.
Victoria Davis filed a suit for damages against J. Barrett Benton, asserting that a letter he wrote defamed her. The trial court granted Benton's special motion to strike pursuant to Louisiana Code of Civil Procedure article 971 and dismissed Davis' action with prejudice. The trial court also ordered Davis to pay Benton $5,000 in attorney's fees and to pay all costs of the proceedings. Davis has appealed, and we affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND
On April 9, 2002, J. Barrett Benton submitted a complaint against Davis, who was employed as an officer with the Baton Rouge City Police Department. The complaint was in the form of a letter to Police Chief Pat Englade. In this letter, Benton informed Chief Englade that Davis lived on Kevel Drive, a street in Baton Rouge, Louisiana, on which Benton had formerly resided. Benton explained that the house in which he had formerly resided was presently leased to a tenant. According to the letter, the tenant had called Benton to complain of ongoing harassment perpetrated by Davis:
[The tenant] reported to me that, on at least four occasions, visitors to her home had been stopped by [Davis] and asked to produce their licenses and insurance documents. Although [Davis] did not issue any tickets (obviously no cause existed), the "police presence" and "shake down" of the drivers visiting the residence had its desired effect of intimidating the visitors to the home. The latest incident occurred on 4/5/02 whereby [Davis] pulled her police car into my tenant's driveway behind the car of a *187 guest who had been at the home for about fifteen minutes. [Davis] went out of her way to embarrass my tenant and her guest by accusing the guest of playing his music too loud when driving up to the residence. Although she doesn't need to, my tenant assured me that she does not tolerate loud music around her home.
Benton's letter also complained of other specific incidents of abuse and harassment by Davis concerning others who resided on the Kevel Drive. Benton's letter stated that despite the fact that these residents had consistently complained of Davis' conduct for over ten years, "the reign of abuse and harassment exacted by Davis continues." Benton opined that Davis had "a personal agenda to harass and intimidate her neighbors with impunity." He further complained that Davis' "misguided agenda has resulted in an abuse of authority which not only misrepresents the role of police officers in our community but also violates the civil rights of law abiding citizens ...." Benton's letter requested action by the police department to resolve the matter.
On July 26, 2002, Davis filed suit against Benton. She asserted that as a 20-year veteran of the police department, she has enjoyed a good reputation for integrity, fairness, and discipline that was injured by Benton's defamatory letter. She asserted that Benton's letter served no purpose other than to intimidate and harass her and to lower her in the eyes of her colleagues. She alleged that as a result of the letter, she was disciplined and was ordered not to police her neighborhood.
Benton answered the petition, generally denying its allegations and affirmatively alleging that Davis' suit was frivolous. He asserted that his letter was "an expression of a citizen's interest and right to make an inquiry of a Police Officer's conduct," constituting constitutionally-protected free speech. Benton further asserted that his communication to Police Chief Englade was privileged.
Additionally, Benton filed a special motion to strike based on the provisions of Louisiana Code of Civil Procedure article 971. Benton prayed for the court to strike Davis' action, asserting that his April 9, 2002 letter of complaint was an exercise of his right to free speech concerning a public issue. Pursuant to this special motion to strike, Benton requested the court to order plaintiff to pay reasonable attorney's fees and all costs of the proceedings. Benton also filed a separate motion for attorney's fees.
On December 2, 2002, the trial court held a hearing regarding Benton's motion to strike. During this hearing, Benton introduced various affidavits into evidence. In his own affidavit, Benton stated that he leases his Kevel Drive home to Tausha Lee, who called him in early April 2002, complaining of Davis' harassing behavior. Benton swore that Lee sought his assistance in preventing further harassment. Because he had heard numerous complaints of Davis' inappropriate use of her position as a police officer prior to Lee's call, Benton stated he felt a duty to Lee and the neighborhood community to report such behavior to the police department. Accordingly, he filed the April 9, 2002 complaint directed to Chief Englade. Benton's affidavit further states that he filed the complaint with no malicious intent, and he did not copy the executed complaint to any other person, entity or administrative authority other than his legal counsel.
Lee's affidavit states that Benton's complaint accurately described a series of incidents in which Davis used her position as a police officer to engage in harassing behavior towards Lee's visitors. Lee further swore that she informed Benton of Davis' *188 actions "in the hope that he would somehow aid her in having these actions stopped."
Chief Englade's affidavit states that Benton's April 9, 2002 letter was in the form of a citizen's complaint alleging misconduct by Davis. He further stated that pursuant to departmental policies, the complaint was treated as a citizen's complaint and processed only through the appropriate channels of investigation within the police department. He averred that the complaint was handled in a confidential manner and no information regarding the complaint was released or published to the general public. He also averred that the complaint was not made known to any members of the police department, except as needed to implement an investigation and then only to the appropriate chain of command over Davis. According to Chief Englade's affidavit, the Internal Affairs division conducted an investigation as a result of Benton's complaint, but no disciplinary action was taken against Davis as a result of the investigation.
Based on these affidavits, the trial court determined that Benton's conduct was protected by a conditional privilege. Based on this finding and pursuant to Louisiana Code of Civil Procedure article 971, the trial court granted Benton's special motion to strike. During the December 2, 2002 hearing, the trial court deferred its ruling on the issue of attorney's fees. By judgment dated January 29, 2003, defendant's special motion to strike was granted, and plaintiff's action was stricken and dismissed with prejudice.
On February 24, 2003, the trial court held a hearing on Benton's motion for attorney's fees. After considering evidence, the trial court granted Benton's motion and awarded him $5,000 in attorney's fees. Additionally, the trial court ordered Davis to pay all costs of the proceedings. The trial court signed a written judgment in accordance with these findings on March 18, 2003. Davis has appealed both adverse judgments.[1] Davis contends the trial court erred in determining that: 1) this case involved a matter of public interest pursuant to Article 971; 2) Benton's letter was protected by a conditional privilege; and 3) that Benton was entitled to recover $5,000 in attorney's fees.

II. ANALYSIS
Louisiana Code of Civil Procedure article 971 provides as follows, in pertinent part:
A. (1) A cause of action against a person arising from any act of that person *189 in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
...
B. In any action subject to Paragraph A of this Article, a prevailing defendant on a special motion to strike shall be entitled to recover reasonable attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award reasonable attorney's fees and costs to a plaintiff prevailing on the motion.
...
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
...
In granting Benton's special motion to strike, the trial court implicitly found that Article 971 was applicable, i.e., that Benton's complaint constituted free speech under the United States or Louisiana Constitution in connection with a public issue. If such speech was defamatory, the court concluded it was protected by a qualified privilege, and thus, plaintiff had not established a probability of success on her claim.
Davis contends that the trial court improperly determined that this case involved a matter of public interest pursuant to Article 971; she argues that Benton had solely a pecuniary interest in the matter. She claims he was only interested in satisfying his tenant so that he did not have to look for another tenant to lease his rental property. She asserts that Benton did not live in the neighborhood and did not witness the events addressed in his complaint. She urges that the case arose out of her routine habit of patrolling her small, relatively remote, neighborhood. Davis justifies her actions, stating she felt a need to protect her community. She explains that the people who received her scrutiny were less than pleased and wanted her to stop policing the neighborhood. She also urges that she filed suit to set the record straight and to prevent Benton *190 from "bullying her and ruining her reputation...."
Article 971 was enacted by Acts 1999, No. 734, § 1. Section 2 of that Act provides:
The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.
Applying the language of Article 971 broadly, as directed by the legislature, we find no error in the trial court's determination that Benton's complaint constituted free speech in connection with a public issue. There is no need to determine whether Davis' actions in patrolling her neighborhood were appropriate. The conduct of police officers in general is a matter of public interest. And citizens have the right to question the conduct of police officers without fear of reprisals from those whose conduct is questioned. Although Benton's letter of complaint was sent at least in part to appease his tenant and, most likely in part, to protect his rental income, it does not follow that his letter of complaint was not in connection with a public issue. The trial court properly determined that Benton's conduct of submitting the letter of complaint to Chief Englade constitutes "[a]ny other conduct in furtherance of the exercise of the ... constitutional right of free speech in connection with a public issue or an issue of public interest." La. C.C.P. art. 971F(1)(d).
Because Benton's letter of complaint falls within the category of speech addressed in Article 971, Davis' suit was subject to the special motion to strike, unless the court determined that Davis had established a probability of success on her claim. La. C.C.P. art. 971A. The trial court concluded Davis would not be successful because Benton's speech was protected by a conditional privilege. We find no error in this conclusion.
A cause of action for defamation arises out of a violation of Louisiana Civil Code article 2315. Ruffin v. Wal-Mart, XXXX-XXXX, p. 2 (La.App. 1st Cir.5/10/02), 818 So.2d 965, 967, writ denied, XXXX-XXXX (La.9/30/02), 825 So.2d 1200. The following elements are essential to prevail on a claim of defamation: 1) defamatory words; 2) publication; 3) falsity; 4) malice, actual or implied; and 5) resulting injury. Id. One who makes an otherwise defamatory statement, enjoys a conditional privilege upon establishing that he made that statement in good faith, on a matter in which he had an interest or a duty, and to another person with a corresponding interest or duty. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512, p. 15 (La.7/5/94), 639 So.2d 730, 743. A statement is made in good faith when it is made with reasonable grounds for believing it to be true. Ruffin v. Wal-Mart, XXXX-XXXX at p. 3, 818 So.2d at 967-968.
Herein, a review of the affidavits submitted by Benton establishes that his letter of complaint was made based on a good faith belief that the statements therein were true. The matter complained of was a matter in which Benton had an interest, i.e., he sought police action to protect his tenant and others in the neighborhood from harassment by a police officer. Benton's letter of complaint was *191 submitted to Chief Englade, a person with authority and a corresponding duty to address matters regarding alleged police misconduct. The evidence regarding these essential facts was not contradicted by Davis. Accordingly, we find that the trial court correctly found that Benton's letter of complaint was subject to a conditional privilege.
Lastly, Davis asserts that the award of attorney's fees was excessive. In support of his claim for attorney's fees, Benton submitted an affidavit establishing that his attorney's fees totaled $6,833 for 53.45 hours of legal work. After considering the work performed in connection with the case, the trial court awarded $5,000 in attorney's fees. Louisiana Code of Civil Procedure article 971B provides that a prevailing defendant on a special motion to strike shall be entitled to recover reasonable attorney's fees. Based on the record before us, we find no abuse of discretion in the amount awarded by the trial court.

III. CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Appeal costs are assessed against Davis.
AFFIRMED.
NOTES
[1] The January 29, 2003 judgment was appealed pursuant to an order signed March 14, 2003. Although the January 29, 2003 judgment was silent as to the issue of attorney's fees, the record establishes this issue had been deferred. Thus, the January 29, 2003 was a partial judgment because it did not grant Benton all of the relief for which he prayed. We recognize that generally, where a judgment is silent as to any part of a demand or any issue that was litigated, that issue or demand is deemed rejected. Best Fishing, Inc. v. Rancatore, 1996-2254, p. 5 (La.App. 1st Cir. 12/29/97), 706 So.2d 161, 163. However, the record herein establishes that defendant's motion for attorney's fees was not litigated during the December 2, 2002 hearing addressing defendant's special motion to strike. Although the January 29, 2003 partial judgment was not immediately appealable because it was not designated as a final judgment by the court after an express determination that there was no just reason for delay, we can consider the correctness of this interlocutory judgment in conjunction with the appeal of the March 18, 2003 judgment, which is final and appealable. See People of Living God v. Chantilly Corp., 251 La. 943, 947-948, 207 So.2d 752, 753 (1968); Houghton v. Our Lady of the Lake Hosp., Inc., XXXX-XXXX, p. 3 (La.App. 1st Cir.7/16/03), 859 So.2d 103, 105.